## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| | ) | Case No. 09-10452 |
| FOOTHILLS TEXAS, INC., et al. | ) | Jointly Administered |
| | ) | |
| Debtors. | ) | |
| | ) | |
| _____ | ) | |
| FOOTHILLS TEXAS, INC., et al. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Adv. Pro. No. 10-51308 (CSS) |
| | ) | |
| MTGLQ INVESTORS, L.P., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

### OPINION[1]

| | |
|---|---|
| FOX ROTHSCHILD LLP | BAYARD, P.A. |
| Jeffrey M. Schlerf | Neil B. Glassman |
| L. John Bird | Colin R. Robinson |
| 919 North Market Street, Suite 1600 | 222 Delaware Avenue, Suite 900 |
| Wilmington, DE 19801 | Wilmington, DE 19899 |
| | |
| -and- | -and- |
| | |
| FOX ROTHSCHILD LLP | THOMPSON & KNIGHT LLP |
| Samuel H. Israel (Argued) | David M. Bennett (Argued) |
| 2000 Market Street | Katharine E. Battaia |
| 10th Floor | 1722 Routh Street, Suite 1500 |
| Philadelphia, PA 19103 | Dallas, Texas 57201 |
| | |
| -and- | Counsel for MTGLQ Investors, L.P. |

---

[1] This Opinion constitutes the Court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

WINSTON & STRAWN LLP
James Donnell
Sarah L. Trum
200 Park Avenue
New York, New York 10166

    -and –

Allen D. Cummings (Argued)
Law Offices of Allen D. Cummings
1777 NE Loop 410, Suite 600
San Antonio, TX  78217

Counsel for Reorganized Debtors

Dated:  July 20, 2012

Sontchi, J._____

## INTRODUCTION

In 2006, the Debtors executed an Instrument in favor of MTGLQ.  Under applicable law, the Instrument conveyed to MTGLQ an "overriding royalty interest" of 5% of the working interest in oil and gas produced from the subject land.  MTGLQ timely and properly recorded the Instrument soon after it was executed.

In 2009, the Debtors filed for bankruptcy. After filing the petition, the Debtors made post-petition transfers to MTGLQ under the Instrument.  In addition, prior to confirmation, the Debtors scheduled the Instrument as an executory contract that was subject to rejection.  In 2010, the Court confirmed the Debtors' Plan, which deemed any "executory contracts" listed in the Debtor's schedules (such as the Instrument) to be

rejected.    The Court retained jurisdiction to hear disputes concerning executory contracts.

The crux of this dispute is whether the Instrument was, in fact, at the time of confirmation of the plan, an executory contract subject to rejection.  The Debtors argue that the Instrument was an executory contract.  As such, they filed this action seeking a declaration that the Instrument was rejected and that any remaining obligations under it have been terminated.   Assuming the Instrument was rejected, the Debtors also demand the return of the unidentified post-petition transfers.  MTGLQ argues that the Court should dismiss the suit for lack of subject-matter jurisdiction or for failure to state a claim.

The Court will grant MTGLQ's motion to dismiss for failure to state a claim.[2] The Instrument is a single integrated agreement, did not qualify as an "executory contract" under § 365, and, consequently, could not be rejected as an executory contract. As all of the counts in the complaint arise from the Debtors' erroneous conclusion that the Instrument was an executory contract, the entirety of the complaint will be dismissed.

---

[2] The Court will deny MTGLQ's motion to dismiss for lack of subject matter jurisdiction.  On the face of the Amended Complaint, this Court possesses subject matter jurisdiction over each of the foundational claims.  These claims turn upon the proper application of provisions in the Bankruptcy Code and owe their existence to the filing of the bankruptcy petition, *see Stoe v. Flaherty*, 436 F.3d 209, 217 (3d Cir. 2006) (explaining claims "arise under" the Code if they invoke a substantive right provided by the Code and "arise in" a bankruptcy case "if they have no existence outside of bankruptcy.").  In addition, they relate to the Debtor's potential liability to the former estate's creditors under a provision of the Plan and Confirmation Order, *cf. In re Shenango Group Inc.*, 501 F.3d 338, 344 (3d Cir. 2007) (finding post-confirmation "related to" jurisdiction).

## JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this district pursuant to 28 U.S.C. sections 1408 and 1409. The Court has the judicial power to enter a final order in this matter.

## BACKGROUND

### A.    Factual Background

Foothills Texas, Inc. ("Foothills") and certain affiliates (collectively, the "Debtors") filed for bankruptcy in February 2009. However, the facts precipitating the instant proceedings begin three years earlier.

In September 2006, Foothills and MTGLQ executed an instrument (the "Instrument") conveying an overriding royalty interest (the "overriding royalty" or "override") to MTGLQ of 5% of the working interest in oil and gas produced from the subject land.[3] Specifically, the Instrument grants to MTGLQ:

> [A]n overriding royalty interest carved out of each Subject Interest . . . equal to five percent . . . of the [Working Interest] Percentage of all oil, gas and other minerals in, under and produced from or allocable to the Subject Lands. . . . TO HAVE AND TO HOLD . . . forever. . . .[4]

In the oil and gas industry, an overriding royalty interest (sometimes called an override) conveys a fraction of oil and gas production, whether in proceeds or in-kind.[5] "An overriding royalty is an interest in real property regarded as a covenant running with the land between the assignor and the assignee, and is enforceable by the assignor

---

[3] *See, e.g.*, Def.'s Supp. Mem. App. 1A, Instrument [hereinafter the "Instrument"].

[4] Pls.' Am. Compl. ¶ 23.

[5] *See, e.g.*, *MacDonald v. Follet*, 142 Tex. 616 (1944); *Tennant v. Dunn*, 130 Tex. 285 (Comm'n App. 1937).

against the assignee."[6]  As such MTGLQ timely recorded the overriding royalty interest with the applicable authorities.[7]

In January 2010 (approximately one year after the Debtors filed bankruptcy), this Court entered an order confirming the Debtors' Plan of Reorganization (the "Plan"). Appended to the Plan was a Plan Supplement.  And, in the Plan Supplement, the Debtors listed the "Conveyance of Overriding Royalty Interest as an executory contract to be rejected."[8] The Plan provided for:

> [The assumption of a]ll executory contracts . . . to which any of the Debtors are parties. . ., *except for any executory contract* that . . . is specifically designated or generally *described in the Plan Supplement*, as a contract . . . to be rejected. . . .[9]

Through the Confirmation Order, this Court authorized the Debtor to reject any "*executory contracts*" that were "listed in the Debtors' Plan Supplement as agreements to be rejected."[10] This Court retained jurisdiction to adjudicate related future disputes.[11]

The Debtors have interpreted the Confirmation Order as rejecting the Instrument and terminating all of their duties owed under the overriding royalty interest.  For its part, MTGLQ agrees that the Court rejected any "*executory contracts*."[12]  MTGLQ claims,

---

[6] *EOG Resources, Inc. v. Hanson Productions Co.*, 94 S.W. 3d 697, 701 (Tex. App. San Antonio 2002).

[7] *See* Pls.' Am. Compl. ¶ 23; *see also* Def.'s Supp. Mem. App. 1B, at A0029-A0035.

[8] *See* Pls.' Am. Compl. ¶ 13; *see also* Def.'s Supp. Mem. Tab 6, at A0208-0223.

[9] *See* Pls.' Am. Compl. ¶ 12 (quoting Plan § VII.A) (emphasis supplied).

[10] Confirmation Order ¶ 28.

[11] Confirmation Order ¶ 87 (retaining "exclusive jurisdiction after Confirmation over all matters arising out of, or related to, the Chapter 11 Cases and the Plan," except not "to hear and determine the disputes arising in connection . . . or any . . . matters relating to, the Exit Facility or Exit Facility Documents).

[12] *Cf.* Pls.' Am. Compl. ¶ 24 ("Rejection of the Contract provided the Reorganized Debtors with relief from its many burdensome covenants, warranties and obligations. . . .").

however, that the override was fully vested in MTGLQ—therefore, it was neither an "executory contract" subject to rejection, nor property of the Debtors' estates.[13] And so began the present dispute.

## B.    Procedural Posture

Initially, in May 2010, the Debtors initiated a contested matter (not an adversary proceeding) against MTGLQ seeking to release any encumbrances related to the override, including the Debtors' continued royalty obligations under the Instrument.[14] Therein, the Debtors asserted the Instrument was rejected and, as a result, their continued obligations were terminated.  This Court denied the Debtors' request on a procedural basis, instructing the Debtors to file an adversary proceeding.[15]

The Debtors filed the Amended Complaint shortly thereafter.  In the Amended Complaint, the Debtors seek a declaration that the Instrument was rejected pursuant to the Confirmation Order and the Debtors' Plan.   They also assert five related, derivative claims.  More specifically the Debtors seek:

- A declaration that the Instrument was rejected;

- A declaration that the Debtors have no remaining obligations to MTGLQ;

- An order directing the Debtors to effectuate the release of any interests related to the Instrument, including any encumbrances created;

- Turnover of all post-petition transfers made pursuant to the rejected Instrument;

---

[13] *Cf.* Def.'s Supp. Mem., at 1 ("Debtors attempt to clawback ownership of an overriding royalty . . . conveyed to MTGLQ more than four years ago. The sole basis for this extraordinary request is Debtors' claim that the September 2006 conveyance . . . was somehow rejected as an executory contract in the Debtors' First Amended Plan of Reorganization. . . .").

[14] *See, e.g.,* Def.'s. Supp. Mem. App. Tab 2, A0045-A0059 (attaching the Debtors' motion).

[15] *See* Def.'s. Mot. App. Tab 10, June 18, 2010 Tr. of Proceedings, at 0291.

- An order avoiding any such post-petition transfers; and

- The imposition of a constructive trust over any such post-petition transfers.

MTGLQ filed a motion to dismiss arguing that, notwithstanding the provisions of the plan, at the time of its confirmation, the Instrument was not an executory contract capable of being rejected. MTGLQ further argues that each of the Debtors' claims is premised upon the Debtors' improper conclusion that the Instrument constituted an "executory contract" and, thus, the Complaint should be dismissed in its entirety.

**C.    The Instrument.**

The Instrument in question is the "Conveyance of Overriding Royalty Interest." In standard oil and gas parlance, the term "overriding royalty" means a given percentage of gross production carved from the working interest in the land but, by agreement, not chargeable with any of the expenses of operation.[16] An overriding royalty interest is an interest carved out of, and constituting part of, the working interest created by an oil and gas lease.[17] It is a type of royalty. And, like any ordinary oil and gas royalty, it "is an interest in real property regarded as a covenant running with the land between the assignor and the assignee, and is enforceable by the assignor against the assignee."[18]

Nonetheless, whether the interest is an overriding royalty (or something else) depends on the true nature of the particular conveyance which gives rise to the

---

[16] *See, e.g., MacDonald v. Follet,* 142 Tex. 616 (1944); *Tennant v. Dunn,* 130 Tex. 285 (Comm'n App. 1937).

[17] *See, e.g., Standard Oil Co. of Tex. v. Marshall,* 265 F.2d 46 (5th Cir. 1959) (applying Texas law).

[18] *EOG Resources, Inc. v. Hanson Production Co., supra.*

interest.[19]    Because merely calling an interest an overriding royalty interest is not

conclusive of its true status,[20] provisions relevant to the grant of an overriding royalty

interest are germane.

The Instrument conveying the overriding royalty in this case provides as follows:

> *For a good and valuable consideration*, the receipt and sufficiency of which are hereby acknowledged, *WI Owner does hereby GRANT, BARGAIN, SELL, TRANSFER, ASSIGN, CONVEY, WARRANT and DELIVER to Royalty Owner an overriding royalty interest carved out of each Subject Interest* (collectively, the "ORRI") equal to five percent (5.0%) of the WI percentage of all oil, gas and other minerals in, under and produced from or allocable to the Subject Lands.

> TO HAVE AND TO HOLD the ORRI unto Royalty Owner, its successors and assigns, *forever*. This Conveyance is made *with full substitution and subrogation of Royalty Owner in and to all covenants and warranties* by others heretofore given or made.[21]

An important feature of overriding royalty interests is the fact that the interest is free

and clear of costs and expenses. More specifically, the characteristics of a royalty

interest necessarily include that "it is an expense-free obligation . . ., payable as a

specified share of the gross production, and is to continue throughout the life of the

lease." [22]    In this case, the Instrument contemplates the payment of costs and expenses

*by the Debtors*.

---

[19] *Delta Drilling Co. v. Simmons*, 161 Tex. 122, 126–27 (Tex. 1960).

[20] *Delta Drilling Co.*, 161 Tex. at 127.

[21] Instrument § 2.1. (emphasis added).

[22] *See, e.g., Delta Drilling Co.*, 161 Tex. at 127. In *Delta Drilling*, the court considered a provision that stated: "Lessor reserves . . . a one-sixteenth of seven-eighths . . . overriding royalty interest, free and clear of all cost of development, except taxes," *id.* The court held that the interest was an overriding royalty because "[t]he interest . . . has the characteristics of a royalty interest.

The Instrument specifies that the override is free and clear of a number of obligations:

> Except for Specified Taxes . . . the ORRI and the ORRI Hydrocarbons shall be free and clear of (a) all taxes of any kind, (b) all costs and expenses associated with acquiring, exploring, developing, maintaining, producing, operating, reworking, recompleting, and remediating the Subject interests, (c) all royalties . . . and similar charges burdening the Subject Interests, (d) all costs for separating, gathering, compressing, treating, processing or marketing ORRI Hydrocarbons or of transporting ORRI Hydrocarbons to the point of sale in a condition to meet pipeline or transporter specifications and qualifications.

In addition, it specifies the entity charged with those obligations.

> All of the foregoing taxes (other than Specified Taxes), costs and expenses, royalties, overriding royalties, production payments, and similar charges shall be paid by WI Owner promptly. . . . In addition, WI Owner will promptly . . . pay all Reimbursable Expenses which have been paid by or on behalf of Royalty Owner. Each amount which is to be paid by WI Owner pursuant to this Section 2.3 which is instead paid by or on behalf of Royalty Owner shall bear interest at the Fixed Rate on each day from and including the date of such payment until but not including the date repaid by WI Owner.[23]

Thus, the Instrument is an overriding royalty interest.  But is it an executory contract?

## LEGAL STANDARD

The applicable legal standard is well known. A Rule 12(b)(6) motion serves to test the sufficiency of the factual allegations in the plaintiff's complaint.[24] The Third Circuit has implemented a two-part analysis: "First the factual and legal elements of a claim should be separated.  The [court] must accept all of the complaint's well-pleaded

---

[23] Instrument § 2.2.

[24] *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993) ("The pleader is required to set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that these elements exist.").

facts as true, but may disregard any legal conclusions."[25]  Next, "a [court] must . . .

determine whether the facts alleged in the complaint are sufficient to show that the

plaintiff has a 'plausible claim for relief.' In other words, a complaint must do more

than allege the plaintiff's entitlement to relief. A complaint has to '*show*' such an

entitlement *with its facts*."[26]

    Where might these facts be found? Generally, a court may consider the facts

alleged in the pleadings, documents attached as exhibits or incorporated by reference in

the pleadings and some matters judicially noticed.[27] In the Third Circuit, a court may

consider "concededly authentic document[s] upon which the complaint is based when

the defendant attaches such a document to its motion to dismiss."[28] But the court will

not take into account additional facts asserted in a memorandum opposing the motion

to dismiss because such memoranda do not constitute pleadings under Rule 7(a).[29]

    Here, the question is whether the Debtors' allegations—apart from a mere legal

conclusion that the Instrument was an executory contract—support the view that the

Instrument was subject to rejection. In resolving the dispute, the Court will base its

---

[25] *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice . . . .  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.").

[26] *Id.* (emphasis added); *see also Buckley v. Merrill Lynch & Co., Inc. (In re DVI, Inc.)*, Bankr. No. 03-12656, Adv. No. 08-50248, 2008 WL 4239120, at *4 (Bankr. D. Del. Sept. 16, 2008) ("The plaintiff must put some 'meat on the bones' by presenting sufficient factual allegations to explain the basis for its claim.")

[27] *Pension Ben. Guar. Corp.*, 998 F.2d at 1196; *Steinhardt v. Citicorp.*, 126 F.3d 144, 144, 145 n.1 (3d Cir. 1997).

[28] *Pension Ben. Guar. Corp.*, 998 F.2d at 1196.

[29] *See Pennsylvania ex rel. Zimmerman v. Pepsico, Inc.*, 836 F.2d 173, 181 (3d Cir. 1998) ("[L]egal theories set forth in Pennsylvania's brief are helpful only to the extent that they find support in the allegations set forth in the complaint.")

discussion on the pleadings and the Instrument referenced and incorporated within the pleadings.

## DISCUSSION

The crux of the dispute is whether the Instrument was an executory contract at the time of confirmation of the plan and, thus, subject to rejection. The Debtors asserts it was and not surprisingly, MTGLQ disagrees. MTGLQ protests that the *overriding royalty interest* was a fully vested conveyance of an interest in real property, so that the Instrument could not be rejected.[30]

We begin with the Code. With certain exceptions not relevant here, section 365(a) of the Code provides that "the trustee [or debtor in possession], subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor."[31] Here, no one argues that the Instrument constitutes an "unexpired lease," so the dispute turns on the meaning of the term "executory contract" under the Code.

### A.    Executory Contracts in § 365(a)

What is an executory contract? The Code does not define the term. At minimum, Congress intended the term to refer to contracts "in which performance is due to some extent on both sides."[32] Thus, based upon legislative history and a definition proposed by Professor Vern Countryman, the Third Circuit defines an executory contract as "a contract under which the obligation of both the bankrupt and the other party to the

---

[30] *See, e.g.,* Def.'s Supp. Mem., at 2.

[31] *See* 11 U.S.C. § 365(a).

[32] H.R. Rep. No. 95-595, 347 (1977), 1978 U.S.C.C.A.N. 5787, 5963; *see In re Exide Technologies*, 607 F.3d at 962 ("With congressional intent in mind, this Court has adopted the . . . definition" quoted above); *In re Columbia Gas Sys. Inc.*, 50 F.3d 233, 238 (3d Cir. 1995).

contract are so far underperformed that the failure of either to complete performance would constitute a material breach excusing the performance of the other."[33]

Under this definition, the Third Circuit has not only reiterated that both parties must owe obligations, but also clarified the extent to which performance must be due. In *Columbia Gas*, for instance, the Court explained that "unless *both* parties have unperformed obligations that would constitute a *material breach* if not performed, [a] contract is not [an] executory [contract] under § 365."[34]  Along similar lines, the *Exide* Court refused to find that a contract fell within the definition of an executory contract where, after interpreting the contract, the Court found that the party had substantially performed and, therefore, did not owe any "material continuing obligation[s]."[35]

Consider the following.  Corporation A licenses the right to use its trademark to Corporation B in a single integrated agreement. B pays for the right to use, thereby substantially performing, but has some insignificant obligations outstanding. Can A *terminate B's right* by rejecting it? The answer will typically be no. The parties must owe reciprocal material obligations or the agreement is not executory for purposes of § 365.[36] B paid for its right to use the trademark and substantially performed; the trademark it cannot be rejected (nor terminated).[37]

---

[33] *See, e.g., In re Exide Technologies*, 607 F.3d 957, 962 (3d Cir. 2010).

[34] *In re Columbia Gas Sys. Inc.*, 50 F.3d at 238 (emphasis added).

[35] *Cf. In re Exide Technologies*, 50 F.3d at 964.

[36] *Cf. In re Exide Technologies*, 50 F.3d at 964.

[37] *Id.*

Here, the Debtors do not argue that MTGLQ owes outstanding obligations. Instead, the Debtors argue that the contract is executory because they, the Debtors, owe continuing obligations to MTGLQ, including obligations related to royalty payments, expenses, indemnification, marketing, record keeping, operating, and sale of the working interest as a consequence of the Instrument. But this misses the mark. In this two party arrangement "[the basic] inquiry is to determine whether [the relevant instrument] contained at least one obligation for both [the promisee] and [promisor] that would constitute a material breach under [applicable state] law if not performed. If not, then the [Instrument] is *not an executory contract*."[38] Accordingly, the Court must determine whether both parties owe continuing, material obligations.

### B.     Do *Both* Owe Continuing, *Material* Obligations?

MTGLQ argues that the Instrument was not subject to rejection because it was not an executory contract at the time of confirmation of the Debtors' plan. In response, the Debtors argue that the Instrument contains severable, continuing obligations owed by the Debtors to MTGLQ. To address these points, the Court (1) notes that the Instrument was clear, definite, and unambiguous; (2) finds that the Instrument was a single, integrated agreement; and (3) concludes that the Instrument was not subject to rejection as an executory contract.

---

[38] *In re Exide Technologies*, 607 F.3d at 962 (citing *In re Gen. DataComm Indus.*, Inc., 407 F.3d 616, 623 (3d Cir. 2005)).

### 1. The contract is clear, definite and unambiguous.

To determine the parties' obligations, as well as whether the parties have performed under the contract, the Court must examine the Instrument. Here, general rules of construction will be utilized; "[w]hen construing instruments purporting to grant or reserve oil and gas interests, general rules of construction apply."[39]

When construing a contract the court will divine the parties' intent at the time that the parties entered into the contract.[40] "The interpretation of a written contract is a quest for the intention of the parties to it."[41] Typically, the court will ascertain the parties' intent based upon the plain language within the four corners of the document.[42] When reading the contract, "[l]anguage should be given its plain grammatical meaning unless it definitely appears that the intention of the parties would thereby be defeated."[43] Most importantly, "[i]f a written instrument is so worded that it can be given a certain or definite legal meaning or interpretation, then it is not ambiguous and the court will construe the contract as a matter of law."[44]

Here, the Instrument is not ambiguous, but instead definite and certain. Therefore, the Court must interpret the Instrument as a matter of law.

---

[39] 55 Tex. Jur. 3d Oil and Gas § 79.

[40] *See, e.g., SAS Institute, Inc. v. Breitenfeld*, 167 S.W.3d 840, 841 (Tex. 2005) ("The intent of a contract is not changed simply because the circumstances do not precisely match the scenarios anticipated by the contract.")

[41] *Caldwell v. Curioni*, 125 S.W.3d 784, 792 (Tex. App.—Dallas 2004) (citing *Reilly v. Rangers Mgmt., Inc.*, 527, 529 (Tex. 1987)).

[42] *SAS Institute*, 167 S.W.3d at 841 (finding contract unambiguous).

[43] *Caldwell*, 125 S.W.3d at 792.

[44] *SAS Institute*, 167 S.W.3d at 841.

### 2. *The Instrument is not severable; it is a single integrated agreement.*

As a general rule, the decision to reject a contract "is an all-or-nothing proposition."[45] But, in limited circumstances, some courts have been willing to treat an agreement as severable and subject to rejection if the contract would receive the same treatment under applicable law.[46] Thus, if a purported agreement actually consists of multiple distinct, agreements, and at least one of those portions is an "executory contract," then the severed portion may be rejected pursuant to § 365.[47]

As with all things, there are limits. One important limit is the court will only sever a contract if it can be severed under applicable law.[48] In the current instance, applicable law means the laws of Texas.

Under Texas law, determining whether a contract is severable is ordinarily a question of law. A "divisible contract" is said to exist when performance by one party consists of several distinct and separate items and the price paid by either party is apportioned to each item.[49] No single test or rule of law can be used to ascertain whether a contract is divisible or indivisible.[50] But the inquiry is primarily determined

---

[45] *In re CellNet Data Systems, Inc.*, 327 F.3d 242, 249 (3d Cir. 2003).

[46] *Stewart Title Guaranty Co. v. Old Republic National Title Ins. Co.*, 83 F.3d 735, 741–42 (5th Cir. 1996); *In re Buffets Holdings, Inc.*, 387 B.R. 115 (relying on Norton Bankr. L. & Prac. § 39:11 (2d ed. 1999)) (refusing to apply the doctrine due to treatment under Illinois state law).

[47] *Stewart Title Guaranty Co.*, 83 F.3d at 741–42.

[48] *Id.*

[49] *See, e.g., Johnson v. Walker*, 824 S.W. 2d 184, 187 (Tex. App.—Forth Worth 1991).

[50] *Id.*

by intent of the parties, as evidenced by the language of the Contract, the subject matter of the agreement and the conduct of the parties.[51]

The intent of the parties is the principal determinant of divisibility.[52] The case *Johnson v. Walker*, for instance, turned on a question of intent.[53] In that case, the court found that an agreement involving periodic payments was indivisible, since the parties intended to agree to the whole. The court explained: "The contract in question is an agency contract whereby Johnson was to market Walker's insurance policies. It is similar in nature to an employment contract where an employee receives commissions for each sale. . . . Since the agent's contract in the present case contemplated agreement to the entire bundle of rights and duties included therein, it is not divisible, and Johnson's claim fails."[54]

In the current case, the manifest intent of the parties was to convey an overriding royalty interest. Among other things, the Instrument was named the "Conveyance of Overriding Royalty Interest"; the Debtors do not assert any facts to support the intention of the parties to treat the "Conveyance" as divisible; the Debtors have not provided any facts to indicate that separate consideration was paid for the various items; and the Debtors have not asserted any facts to demonstrate that the parties

---

[51] *See, e.g., Johnson*, 824 S.W. 2d at 187.

[52] *See, e.g., Sheline v. Dun & Bradstreet Corp.*, 948 F.2d 174, 177 (5th Cir. 1991) (finding that an unenforceable covenant not to compete could not be severed from the remainder of a severance agreement because severability "is governed by the intent of the parties") (applying Texas law).

[53] *Johnson*, 824 S.W. 2d at 187.

[54] *Id.* at 187.

treated the agreement as divisible. Rather, as in *Johnson*, the parties appear to have contemplated agreement to the entire bundle of rights and duties.[55]

Additionally, the Debtors' Amended Complaint treats the Instrument as a single, indivisible whole. Absent evidence to the contrary, Texas courts will not treat a contract as severable where the parties have not done so themselves.[56] One important case is *Champlin Refining Co. v. Street*.[57] In *Champlin Refining*, the court refused to treat a contract as severable where (1) there was nothing in the contract, considered from its four corners, which would indicate that the parties ever intended that it should be severable; and (2) the plaintiff's prayer for relief and the pleadings of the defendant treated the contract as in an entire contract.[58] As the court explained: "The plaintiff's prayer for relief and the pleadings of the defendant treat it as an entire contract. Their conduct is a practical construction of the instrument by the parties and indicates that the idea of severability is an afterthought."[59]

In the instant case, the Debtors' pleadings continually refer to the Instrument as a single Instrument (i.e., as "the Contract"); the Debtors' schedules listed the Instrument as a single instrument (i.e., as the "Conveyance of Overriding Royalty"); and MTGLQ's

---

[55] To be sure, the Instrument contains a boilerplate severability clause. However, a severability clause does not transmute an otherwise dependent promise into one that is independent and divisible, *see, e.g.*, *City of Beaumont v. International Ass'n of Firefighters, Local Union No. 299*, 241 S.W.3d 208 (Tex. App.—Beaumont 2007) (citing *Patrizi v. McAninch*, 269 S.W.2d 343, 348-49 (1954)).

[56] *See Champlin Refining Co. v. Street*, 57 S.W.2d 903, 907 (Tex. App.—Amarillo 1933).

[57] *Id.* at 907.

[58] *See id.* at 907.

[59] *Id.* at 907.

pleadings refer to the Instrument as a single instrument (i.e., as "the Conveyance"). There is no reason to treat the instrument as severable.

### 3. The Instrument was not subject to rejection.

Having explained that the Instrument was clear and unambiguous and finding that the Instrument was a single integrated agreement, the remaining question is did parties owe continuing, material obligations sufficient to render the Instrument executory? If not, the Instrument was not an executory contract subject to rejection.

### a) Full performance.

MTGLQ does not owe any remaining performance obligations under the Instrument.

The instrument "CONVEY[ED] . . . and DELIVER[ED] . . . an overriding royalty interest . . . to Royalty Owner," MTGLQ, "[f]or a good and valuable consideration, the receipt and sufficiency of which [were] acknowledged."[60] Moreover, the conveyed interest is referred to as an overriding royalty interest throughout the Instrument; and each provision relates, in one way or another, to the conveyance of such an interest. The plain grammatical and linguistic import of the granting clause indicates that the Debtors conveyed a present, vested interest in an overriding royalty interest.

The Instrument also indicates that the covenants and warranties were not only part-and-parcel of the conveyance but also given in exchange for a single consideration. For instance, each covenant specifically relates back to the conveyance of an overriding

---

[60] Instrument § 2.1.

royalty interest. And the Instrument's language incorporates the covenants, warranties and obligations. Specifically, the Instrument states:

> For a good and valuable consideration . . . WI Owner does hereby . . . CONVEY . . . and DELIVER . . . an overriding royalty interest . . . TO HAVE AND TO HOLD . . . forever. *This Conveyance is made with full substitution and subrogation of Royalty Owner in and to all covenants and warranties by others. . . .*[61]
>
> * * *
>
> All covenants and agreements of WI Owner herein contained shall be deemed to be covenants running with the Subject Interests. *All of the provisions hereof shall inure to the benefit of Royalty Owners and its successors and assigns.*[62]

According to the plain language in the Instrument, MTGLQ delivered valid consideration in exchange for the overriding royalty, *including* the Debtors' continuing obligations, covenants and warranties.[63] Although the Debtors note that they owe continuing material obligations to MTGLQ, they have not provided facts to demonstrate that "*both* the Debtors and [MTGLQ] owe unperformed obligations."[64]

### b) Substantial performance.

At minimum, MTGLQ substantially performed under the Instrument, precluding this Court from finding the contract was an "executory contract."

---

[61] Instrument § 2.1 ("Granting Clause") (emphasis added).

[62] Instrument § 5.3 (emphasis added).

[63] *See, e.g.*, Instrument §§ 2.1, 2.2, 5.3.

[64] *In re Columbia Gas*, 50 F.3d at 239 ("[U]nless both parties have unperformed obligations that would constitute a material breach if not performed, the contract is not executory under § 365"). "In cases where the nonbankrupt party has fully performed, it makes no sense to talk about assumption or rejection. . . . Rejection is meaningless in this context, and assumption would be of no benefit to the estate, serving only to convert the nonbankrupt's claim into a first priority expense of the estate at the expense of other creditors," *id.*

In *Exide*, the Third Circuit explained that, in jurisdictions recognizing the substantial performance doctrine, substantial performance will preclude rejection, as the contract cannot be materially breached and, therefore, cannot constitute an executory contract.[65] Specifically, the *Exide* Court confronted a situation in which a debtor previously sold a perpetual trademark license to a non-debtor through an integrated agreement.[66] The Court found the non-debtor "substantially performed" by paying for the license.[67] Therefore, the license obligations were not executory. And, because the license was not executory, it could not be rejected.[68]

Texas courts recognize the substantial performance doctrine.[69] The doctrine of substantial performance (sometimes referred to as substantial compliance) excuses contractual deviations or deficiencies which do not severely impair the purpose underlying a contract.[70] Thus, "[s]ubstantial compliance with the requirements of a

---

[65] *In re Exide Technologies*, 607 F.3d at 963 (explaining that, under New York law, "when a breaching party 'has substantially performed' before breaching, 'the other party's performance is not excused.")

[66] *Id.* at 961 ("Under the Agreement, Exide licensed its 'Exide' trademark to Enersys for use in the industrial battery business. Exide wanted to continue to use the Exide mark outside of the industrial battery business. To accommodate the needs of both parties, Exide granted Enersys a perpetual, exclusive, royalty-free license to use the Exide trademark in the industrial battery business").

[67] *Id.* at 964 ("We also now conclude that we will not confine the [substantial performance] doctrine to construction and employment contract cases.")

[68] *Id.* at 963. The court's reasoning was instructive. In finding that the non-debtor had substantially performed, the court also denied the Debtor's argument that the non-debtor's ongoing, unperformed obligations outweighed its performance. "It relie[d] on the following four obligations of [the non-debtor]: (1) an obligation to satisfy the Quality Standards Provision, and obligations to observe (2) the Use Restriction, (3) the Indemnity Obligations, and (4) the Further Assurances Obligations. . . . [T]hese four obligations d[id] not outweigh the substantial performance [i.e., full payment] rendered and benefits received by [the non-debtor who bought the license]."

[69] *Geotech Energy Corp.*, 788 S.W.2d at 390 (reviewing case law). As the Court explained, "review of the case law reveals that substantial performance is applied to a broad range of contract cases," including contracts regarding employment, rights of first refusal, crane repair, oilfield drilling, and crop sales, *id.*

[70] *See Burtch v. Burtch*, 972 S.W.2d 882, 889 (Tex. App.—Austin 1998).

contract is treated as the legal equivalent of full compliance."[71] And non-breaching parties who have substantially completed their obligations are entitled to recover on a contract.[72]

Here, MTGLQ substantially performed under the contract, which the Court is bound to treat as "the legal equivalent of full compliance."[73] The Instrument is unambiguously intended to convey an overriding royalty interest to MTGLQ. And, by the Instrument's terms, the Debtors did unconditionally grant, sell, convey and deliver to MTGLQ an overriding royalty interest—a fee interest—which was apparently intended to run with the land.[74] As a necessary consequence, the Debtors became obligated to pay accruing royalties, account for royalties, cover costs and expenses, and comply with related duties, including not only marketing production but also maintaining and operating as would a reasonably prudent operator.[75] In return, MTGLQ provided "good and valuable consideration" in exchange for this conveyance.[76] And the Debtors have not disputed the exchange. Since the conveyance is unquestioned, it clearly appears that there is essentially nothing left for MTGLQ to do but sit back and collect royalty payments.  Thus, MTGLQ has at least substantially

---

[71] *See Chappell Hill Bank*, 38 S.W.3d at 242 (citing *Del Monte Corp. v. Martin*, 574 S.W.2d 597, 599 (Tex. App.—San Antonio 1978, no pet.)).

[72] *Id.*

[73] *See id.*

[74] *See, e.g.*, Instrument §§ 2.2, 5.3 ("For a good and valuable consideration . . . WI Owner does hereby . . . CONVEY . . . and DELIVER . . . an overriding royalty interest . . . TO HAVE AND TO HOLD . . . forever. . . . All of the provisions hereof shall inure to the benefit of Royalty Owner and its successors and assigns.").

[75] *See supra* Overview Subpart C.

[76] Instrument §§ 2.2 (acknowledging exchange of "good and valuable consideration.")

performed. And, as the Third Circuit has explained: Where a party has substantially performed under applicable law, a contract is not executory and cannot be rejected.[77]

## CONCLUSION

The Court will grant MTGLQ's motion to dismiss. The Instrument was a single indivisible contract which was not an "executory contract." As such, the debtor-in-possession could not "reject" the Instrument as an "executory contract."

The remaining claims will be dismissed along with the rejection claim. The first claim is the foundation.  It asks the court to declare the contract rejected.  Every other claim that follows is founded upon the conclusion that the Instrument was subject to rejection.  Because they are based upon, and derivative of, the first claim for declaratory relief, these claims fail.  An order will be issued.

---

[77] *Cf. In re Exide Technologies*, 607 F.3d at 963 ("The Bankruptcy Court . . . failed to properly measure whether either party had substantially performed. . . . EnerSys has substantially performed by paying the full $135 million purchase price and operating under the Agreement for over ten years.")